**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IRIS ELIZABETH VARGAS PONCE,

Petitioner,

v.

WARDEN OF ADELANTO ICE PROCESSING CENTER, ET AL.,

Respondents.

Case No. 5:26-cv-05931-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On October 6, 2026, Petitioner Iris Elizabeth Vargas Ponce (A# 095-141-694) ("Petitioner"), an immigration detainee then-proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"). (Dkt. 1.) Petitioner contends that she was re-detained by immigration authorities in violation of her procedural due process rights. (Id. at 6.) Petitioner seeks immediate release from custody and an order enjoining Respondents from re-detaining her without providing at least seven days' notice and a pre-deprivation hearing before an Immigration Judge. (Id. at 7.)

On October 15, 2026, Respondents Warden of Adelanto ICE Processing Center, Director of Los Angeles Field Office of Immigration and Customs Enforcement ("ICE") and Enforcement and Removal Operations ("ERO"), Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Attorney General of the United States (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 10.) Respondents contend that Petitioner is validly detained pursuant to a final order of removal and that Respondents are attempting to effectuate that removal order. (Id. at 2.) According to Respondents, Petitioner was ordered removed by an Immigration Judge on December 4, 2012 and Petitioner was granted withholding of removal to Honduras by the Board of Immigration Appeals ("BIA") on March 21, 2013. (Id.) Respondents advise that after Petitioner was re-detained by immigration authorities, on October 7, 2026, Petitioner was approved for a land/border removal to Mexico. (Id.) Respondents further advise that ERO is prepared and ready to remove Petitioner to Mexico in the event that bars to transfer are lifted. (Id.)

On October 13, 2026, the Office of the Federal Public Defender filed a Notice of Appearance on behalf of Petitioner. (Dkt. 9.) On October 16, 2026, Respondents filed a Notice of Intended Removal to Mexico pursuant to General Order 26-05 advising that Respondents intend to transfer Petitioner for purposes of removal to Mexico no earlier than October 21, 2026. (Dkt. 11 at 2.) On October 16, 2026, Petitioner, now represented by counsel, filed an Emergency *Ex Parte* Application to Stay Petitioner's Removal (the *Ex Parte* Application"). (Dkt. 15.) The *Ex Parte* Application sought a temporary stay preventing Petitioner's removal from the Central District of California to preserve the Court's jurisdiction during the pendency of the action. (Id. at 7-8.)

On October 19, 2026, the Court issued a Temporary Restraining Order to Preserve the Court's Jurisdiction. (Dkt. 17.) Specifically, the Court enjoined Respondents from removing Petitioner from this district until further notice so that

the Court could adjudicate Petitioner's claims raised in this action. (Id. at 3.) The Court set a briefing schedule for Petitioner, now represented by counsel, to either file a reply or an amended petition, and the Court advised that it would rule promptly and dissolve the Temporary Restraining Order once the action was fully briefed. (Id.)

On October 23, 2026, Petitioner filed a First Amended Petition. (Dkt. 18.) On November 3, 2026, Respondents filed an Answer to the First Amended Petition. (Dkt. 20.) On November 4, 2026, Petitioner filed a Traverse in Support of Petitioner's First Amended Petition. (Dkt. 21.) This action is now fully briefed. The parties have consented to proceed before a U.S. Magistrate Judge for all purposes. (Dkts. 12, 13, 14.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on her prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the First Amended Petition, which is verified by counsel. (Dkt. 18 at 24-25.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 20.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the First Amended Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner has lived in the United States for twenty-six years. (Dkt. 18 at 8.) She has eight children, two of whom are U.S. citizens. (Id.) In June of 2010, the Government initiated removal proceedings against Petitioner. (Id.) At the recommendation of DHS, the Immigration Court designated Honduras, Petitioner's

country of origin, as the country of removal. (Id.) Petitioner was released from immigration detention on September 25, 2012 under an Order of Supervision ("OSUP"). (Id.) During these proceedings, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") because of repeated gender-motivated violence that she faced in Honduras. (Id.)

Petitioner's application was initially denied because, although the Immigration Judge found that Petitioner had suffered persecution in Honduras, the Immigration Judge also found that this persecution was not due to Petitioner's membership in a particular social group. (Id. at 8-9.) The Immigration Judge therefore ordered Petitioner removed to Honduras. (Id. at 9.) Petitioner appealed, and the appeal was remanded after Petitioner and the Government stipulated to Petitioner's eligibility for withholding of removal. (Id.) On remand, the Immigration Judge again denied relief. (Id.) Petitioner appealed again, and the Board of Immigration Appeals ("BIA") granted withholding of removal. (Id.)

There has been no material change to Petitioner's circumstances she was released on an OSUP and granted withholding of removal. (Id.) She is not a flight risk or a danger to the community, and the Government has not contended otherwise. (Id.) Indeed, before she was detained, Petitioner had begun to prepare an application for a U-Visa based on her cooperation with police after she was the victim of an armed home invasion. (Id.)

Nevertheless, immigration authorities arrested Petitioner on October 1, 2026, during an in-person office visit. (Id.) Immigration authorities did not provide Petitioner with any notice or hearing prior to her detention. (Id.) Rather, on October 2, 2026, after Petitioner was arrested and detained, immigration authorities purportedly served Petitioner with a Notice of Removal stating that ICE intends to remove her to Mexico. (Id. at 9-10.) However, Petitioner has never been ordered removed to Mexico. (Id. at 9.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that her detention without prior notice or a pre-deprivation hearing violated her due process rights. (Dkt. 18 at 11-19.) Petitioner's second claim for relief is that Respondents' attempt to remove her to Mexico without giving her an opportunity to seek withholding of removal violates her statutory and due process rights. (Id. at 19-23.) Petitioner seeks immediate release from custody and an order enjoining her re-detention absent prior notice and a pre-deprivation hearing. (Id. at 23-24.) Petitioner further seeks an order enjoining her removal to any country other than Honduras without first providing her notice and a meaningful opportunity to be heard in reopened removal proceedings. (Id. at 24.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether

there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner has lived in the United States for twenty-six years, was granted withholding of removal to Honduras by the BIA, and was then released from immigration detention on an OSUP.[1] (Dkt. 18 at 8-9.) Thus, the Court concludes that once Petitioner was released from custody, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

(internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

It is also undisputed that immigration authorities re-detained Petitioner on October 1, 2026, during an in-person office visit, without prior notice or a pre-deprivation hearing. (Dkt. 18 at 9.) Thus, the Court concludes that Petitioner's re-detention by immigration authorities on October 1, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on her OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal.

Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Baltazar v. Noem, 2026 WL 413527, at *5 (C.D. Cal. Jan. 30, 2026) ("Where courts have found the procedural due process violation examined here, they routinely order release and enjoin Respondents from re-detaining petitioners without providing a pre-detention hearing before a neutral arbiter."); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Baltazar, 2026 WL 413527; see also Mourey, 2026 WL 467567, at *6 ("If the

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is high because Petitioner has been granted withholding of removal to Honduras and had begun to prepare an application for a U-Visa prior to being re-detained. (Dkt. 18 at 9.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Additionally, given Respondents' stated intent to remove Petitioner to Mexico, the Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where

their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025). Thus, Respondents must permit Petitioner the opportunity to seek withholding of removal in reopened removal proceedings before removing her to a third country.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation

of her due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner and remove her to a third country, versus forcing Petitioner again to suffer detention and file a habeas petition to secure her release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing, as well as basic due process requirements before removal to a third country.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Iris Elizabeth Vargas Ponce (A# 095-141-694) ("Petitioner") from custody on her prior Order of Supervision

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

("OSUP") and return any confiscated property and documents upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1231 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall not attempt to remove Petitioner to any country other than Honduras without first providing written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: November 5, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE